IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-30247 |
| | ) | (Chapter 7) |
| PETRI ENTERPRISES, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 23-30248 |
| | ) | (Chapter 7) |
| GANNETT PEAK, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**FINAL APPLICATION OF THE DAKOTA BANKRUPTCY FIRM FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES INCURRED IN CONNECTION WITH REPRESENTATION OF
<u>PETRI ENTERPRISES, LLC AND GANNETT PEAK, LLC</u>**

Come now Maurice B. VerStandig and The Dakota Bankruptcy Firm (collectively, "DBF"), former counsel for the above-captioned debtors (the "Debtors," and each a "Debtor"),[1] pursuant to Sections 327 and 330 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2016, and apply to this Honorable Court for allowance of compensation of (i) $5,586.34 in attorneys' fees in the matter of Gannett Peak, LLC ("Gannett

---

[1] Undersigned counsel will continue to represent the Debtors through their respective meetings of creditors and will otherwise aid in the provision of information to the Chapter 7 trustee. Counsel is, however, cognizant that when a debtor ceases to be a debtor-in-possession, such "terminate[s] [the debtor's] status as debtor-in-possession and so terminate[s] [counsel's] service under § 327 as an attorney for the debtor-in-possession." *Lamie v. U.S. Trustee*, 540 U.S. 526, 532 (2004). *See also In re NRG Res., Inc.*, 64 B.R. 643, 647 (W.D. La. 1986) ("The intent of the Bankruptcy Code seems crystal clear that just as a trustee replaces the debtor-in-possession for the purpose of administering the estate and operating its business, so it is that the trustee's attorney displaces the debtor's attorney in order that the trustee will have counsel and assistance in performing his fiduciary duties. There is no need for the debtor to have assistance performing those duties which are fully assumed by the trustee, and hence any 'debtor's attorneys' can serve no beneficial purpose for the estate unless they are characterized as attorneys for the trustee.").

Peak"); (ii) $5,106.34 in attorneys' fees in the matter of Petri Enterprises, LLC ("Petri Enterprises"); (iii) reimbursement of $112.53 in expenses in Gannett Peak; and (iv) reimbursement of $146.97 in expenses in Petri Enterprises, (v) to be cumulatively credited against $2,500.00 being held in trust for the benefit of each Debtor; resulting in (vi) an administrative claim in the amount of $3,198.88 in Gannett Peak; and (vii) an administrative claim in the amount of $2,753.32 in Petri Enterprises, and in support thereof state as follows:

**I.      Introduction**

These are two former Chapter 11 cases where the Debtors tried mightily to reorganize but ultimately came up short, with conversion to Chapter 7 ensuing. The Debtors each operated a La Cantina restaurant and each persisted as a debtor-in-possession for several months, undertaking the hard work of trying to make their finances viable for reorganization. And while they both ultimately shut their doors on the eve of confirmation hearings, such does not diminish the efforts they undertook or the good faith with which they approached the Chapter 11 process.

From the day the cases were filed, through the day the cases were converted, the Debtors' counsel worked to usher these companies through Subchapter V. These efforts spanned everything from the traditional tasks of attending hearings and a creditors' meeting to the less traditional tasks of having a series of difficult discussions with the companies' principal about their financial viability and about their ability to make payments under plans of reorganization. Negotiations were had with creditors, motions were drafted and argued, adversary proceedings were docketed, operating reports were prepared and filed, and best efforts were poured into these cases. Compensation for those efforts is now sought.

## II. Recitations Pursuant to Applicable Law

1. The services for which compensation is herein sought were performed between July 29, 2023 and December 20, 2023. Maurice VerStandig performed all billable work.

2. Complete time records for attorney work are appended hereto as Exhibits A, B, and C.

3. Records of expenses incurred are included in the time records appended hereto as Exhibits A, B, and C.

4. No interim fee applications were filed in these cases and, as such, no prior compensation has been taken or allowed. DBF was, however, paid $7,500.00 for pre-petition services in these two cases and the related matter of Bourbon Street LLC ("Bourbon Street"), including (i) preparation of petitions, schedules, and accompanying statements; (ii) advising the Debtors in connection with potential avenues of relief; (iii) assembling a global strategy; and (iv) paying the Chapter 11 filing fees.

5. The retainer being held by DBF was paid by Bourbon Street.

6. DBF has allocated the residue of the retainer in equal parts, applying $2,500.00 to Petri Enterprises, $2,500.00 to Gannett Peak, and $2,500.00 to Bourbon Street.

7. The compensation sought hereunder, if approved, will be paid through (i) exhaustion of the retainers; (ii) allowance of an administrative expense claim in the amount of $3,198.88 in the Gannett Peak matter; and (iii) allowance of an administrative expense claim in the amount of $2,753.32 in the Petri Enterprises matter.

8. There is no agreement for DBF to share compensation with any third party, though (i) DBF is operated by the same professionals and laypersons as The VerStandig Law Firm, LLC, a law firm that is wholly owned by Maurice VerStandig; and (ii) fees earned by DBF are paid to

3

The VerStandig Law Firm, LLC and used to cover that entity's general overhead expenses, including salaries paid to non-attorney staff persons.

### III. Categorization of Time Entries

In accord with guidelines promulgated by the United States Trustee, DBF recorded all time in these matter in project categories. Since the Gannett Peak, Petri Enterprises, and Bourbon Street cases were related and had significant overlap (being jointly administered for the majority of their duration), time was billed to four "clients:" (i) Gannett Peak; (ii) Petri Enterprises; (iii) Bourbon Street; and (iv) "La Cantina" – a fictitious fourth client used to record time and expenses equally applicable to all three debtors. The time recorded – and compensation requested – for each such project category is as follows:

   a. Gannett Peak Case Administration – 1.7 Hours - $680.00

   b. Gannett Peak Plan and Disclosure Statement – 4.2 Hours – $1,680.00

   c. Petri Enterprises Case Administration – 1.4 Hours – $560.00

   d. Petri Enterprises Plan and Disclosure Statement – 3.3 Hours – $1,320.00

   e. "La Cantina" Business Operations – 2.6 Hours – $1,040.00

   f. "La Cantina" Case Administration – 20.6 Hours - $8,240.00

   g. "La Cantina" Plan and Disclosure Statement – 1.00 Hours – $400.00

Each of the "La Cantina" categories has been divided by three, with one third of the time added to the amount sought for Petri Enterprises and one third of the time added to the amount sought for Gannett Peak. This results in $3,226.34 in fees being added to each case.

### IV. Bourbon Street

Since the Bourbon Street case has been dismissed without any retention of jurisdiction to entertain a final fee application, no fee application is filed in that matter. *See, e.g.*, *Matter of Talandis*, 95 B.R. 108, 109–10 (Bankr. S.D. Iowa 1989) ("The court is not divested of jurisdiction

4

over a professional fee application in a dismissed Chapter 11 case if the Order of Dismissal expressly provides that the court retains limited jurisdiction to consider the fee application.") (citing *Matter of Mandalay Shores Co-op. Housing Ass'n*, 60 B.R. 22, 23 (Bankr. M.D. Fla. 1986)); *In re Burke*, 281 B.R. 367, 371 (Bankr. S.D. Ala. 2001) ("Mr. Smith did not file any fee applications in the chapter 11 case before it was dismissed. Once the case was dismissed, Mr. Smith did not have to file a fee application to be paid from the retainer and, in fact, the Court would not have heard a fee application if filed. The Court no longer had jurisdiction over Mr. Burke or his affairs.").

There are, however, scattered circumstances in which bankruptcy courts have entertained fee applications even after dismissal of a case. *See In re Parklex Associates, Inc.*, 435 B.R. 195, 208 (Bankr. S.D.N.Y. 2010).[2] There does not appear to be any precedent, one way or another, from this Honorable Court. As noted *supra*, 1/3 of the "La Cantina" fees exceeds the $2,500.00 retainer allotted to Bourbon Street, so approval of the "La Cantina" fees would, too, equate to exhaustion of the Bourbon Street retainer. If this Honorable Court believes it proper for a fee application to also be filed for Bourbon Street, undersigned counsel is most certainly willing to do so and will supplement this application to include the time and expenses for the Bourbon Street matter.

## V.     Travel Time and Expenses

DBF does not seek compensation for time spent traveling to and from North Dakota, nor reimbursement for the expenses incurred in connection with such travel. As such, while there were in-person court appearances occasioned by these cases, the time records appended hereto are notably devoid of any time entries for travel and any expense entries for airfare/lodging/rental cars.

---

[2] *But see In re Westgate Nursing Homes, Inc.*, 518 B.R. 250, 258 (Bankr. W.D.N.Y. 2014) (distinguishing *Parlex* and holding otherwise).

5

To the extent compensable work was undertaken while traveling (i.e., preparing for a hearing while on an airplane), however, such is included in the services for which compensation is sought.

## VI. Description of Services Rendered

The time records appended hereto as Exhibits A, B, and C contain a thorough description of all services rendered for which compensation is instantly sought. And many of those services are also well reflected on the docket of these cases, whether in the form of papers filed or the notation of hearings attended. By way of a generalized description, however, DBF notes that services included the following:

a.   Advising the Debtors in connection with case-opening matters;

b.   Preparing the Debtors for the initial interview with the Office of the United States Trustee as well as the meeting of creditors, while attending both of those events with the Debtor;

c.   Attending a status conference and filing a report in advance of that conference;

d.   Working with the Debtors to prepare monthly operating reports;

e.   Investigating issues related to the Debtors' utilization of merchant cash advances and commencing adversary proceedings premised upon the same;

f.   Reviewing claims filed by various creditors;

g.   Preparing plans of reorganization; and

h.   Attending various hearings.

**VII.    Conclusion**

WHEREFORE, Maurice Belmont VerStandig and The Dakota Bankruptcy Firm respectfully pray this Honorable Court (i) finally approve and ratify the fees sought herein in the gross sum of $5,586.34 in Gannett Peak; (ii) finally approve and ratify the fees sought herein in the gross sum of $5,106.34 in Petri Enterprises, LLC; (iii) finally approve and ratify the expenses for which reimbursement is sought herein, in the gross amount of $112.53 in Gannett Peak; (iv) finally approve and ratify the expenses for which reimbursement is sought herein, in the gross amount of $146.97 in expenses in Petri Enterprises (v) permit The Dakota Bankruptcy Firm to apply the retainer of $2,500.00 it is holding against the payment of the fees sought in the Petri Enterprises matter; (vi) permit The Dakota Bankruptcy Firm to apply the retainer of $2,500.00 it is holding against the payment of the fees sought in the Gannett Peak matter; (vii) allow The Dakota Bankruptcy Firm a single administrative claim of $3,198.88 in the Gannett Peak matter, being comprised of the total allowed compensation less the foregoing retainer; (viii) allow The Dakota Bankruptcy Firm a single administrative claim of $2,753.32 in the Petri Enterprises matter, being comprised of the total allowed compensation less the foregoing retainer; and (ix) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 17, 2024        By:     /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       The Dakota Bankruptcy Firm
                                       1630 1st Avenue N
                                       Suite B PMB 24
                                       Fargo, North Dakota 58102-4246
                                       Phone: (701) 394-3215
                                       mac@dakotabankruptcy.com

*[Certificate of Service on Following Page]*

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of January, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

I FURTHER CERTIFY that, pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6), a copy of the notice attached hereto as Exhibit D (but not of this application or the other exhibits) is being sent, this 17th day of January, 2024, via First Class Mail, postage prepaid, to all parties on the mailing matrices attached hereto as Exhibits E and F.

/s/ Maurice B. VerStandig
Maurice B. VerStandig